Good morning, your honors, and may it please the court. My name is Anita Earls. I represent appellants, 13 individual voters, the Concerned Citizens for African American Children and the Raleigh-Wake Citizens Association. They are voters who live in election districts for the Wake County Board of Education that are overpopulated as redrawn in 2013 by the North Carolina General Assembly. What matters to them is that when these districts are used for the their votes will carry less weight than the votes of voters in the underpopulated districts. The one-person, one-vote principle is a fundamental guarantee that everyone's vote will count equally. Plaintiffs filed this lawsuit to prevent their votes from being unfairly diluted because of where they live. The district court granted a motion to dismiss for failure to state a claim and erroneously denied the plaintiffs the right to sue state officials in their official capacities. Who are the proper defendants here? Are we in agreement that the State of North Carolina is not a proper defendant for this case? That's correct, your honor. They could have consented to suit but they did not, so they are not a proper party. And what about the named state officials here? Do you have any enforcement authority? We would contend that in fact the legislative officials named in their official capacity do in fact enforce this statute and we explain the reasons why it's important that they be parties in this litigation. What authority would they have to enforce this statute? They are the ones that re-engineered how the board would be elected, redrew the districts, and imposed this plan on the Board of Education. Board of Education itself voted by resolution opposing the new plan and under state law they don't have the power under this particular statute, they don't have the power to make any changes in the way they're elected. The Board of Elections, the Wake County Board of Elections, who is a party for administrative purposes, also does not have the power under state law to redraw election districts. So if a violation is found in this case, it's the... Don't they have the power under Constitution? If it's not done, then you have to go back to the county and the county board then has the authority to draw? No, Your Honor. In fact, the statute that the lower court referred to, which is 15 USC... I'm sorry, let me find the correct statutory citation from North Carolina statutes 115C-37I. The statute there says that the board may make a revision of its it has drawn. That's actually the phrase it has drawn was left out of the reference in the lower court's opinion. But under state law, if the only time that the Board of Education can redraw its districts is if following a decennial census their districts are... We could tell them to use the old districts. Well, actually they can't because they went from a nine single-member district system to a seven-two system. And so... I guess I'm trying to get to understand how these state officials can enforce this law. I mean, enforcement belongs to the executive branch. State of North Carolina is out. And even in their official capacity as legislators are in a position there, what can they do? I mean, how can they enforce this statute? They have taken from the... They have taken the power to draw districts from the Board of Education, said we are the ones who are going to draw the districts. We're going to decide which terms are going to be limited, how many districts is going to be, what the system is going to be. And if there's any chance of a remedy in this case, they are the entity that has the first opportunity to redraw under the law. Remedy can't be your... Can't be your basis, can it? I mean, the chance of remedy. I'm focusing on this enforcement authority. Right. I'm just trying to get to... I don't... I'm not understanding that. So we explained several reasons why they are the proper parties. And I'll point out that there is no case that is ever held that these officials are not the proper parties. And the precedent in this circuit, in Daley versus Hunt, an exact same situation where the legislature had redrawn or had implemented district systems for the Charlotte... The Mecklenburg County Board of County Commissioners and the school board. And in that case, the plaintiff sued the governor, the two legislative leaders, as well as the local Board of Elections. Although I will say that in that opinion, the Fourth Circuit didn't address this specific issue. But I do think it's important to note that traditionally, these are the entities that have been sued. But also, we point out all the reasons and the ways that the legislature is the entity that has the ability to negotiate with the plaintiffs. The plaintiff... This case could, in theory, be resolved by a settlement. But the only entity that can actually change the lines is the legislature. They're the entity that we need discovery from. It's their motivation under this one-person, one-vote claim. That's that issue. Were they improperly... Were these lines drawn with improper motivations? That's a question about the motivation of the legislators. If they are not parties, then we are left with third-party discovery rules which disadvantage us. Well, I'll leave it alone after this. But I'm just trying to understand. It seems to me, if we were to say the district court should enjoin this plan, you go back to the inexistence. I'm having some difficulty understanding what is the authority of a district court to mandate the General Assembly pass a new redistricting plan? Well, Your Honor, in redistricting cases, it's not that the court mandates the legislature pass a law. It's that the court has to defer and give the legislature the first opportunity to remedy the violation. And if the legislature fails to remedy the violation by either not passing a law at all, which happens in redistricting cases, or if they fail to remedy the violation by passing a second law that doesn't remedy it, then the court can take action. But this is recently Supreme Court precedent in the Texas redistricting case, where the Supreme Court clearly said the district court has to allow the jurisdiction, the body that drew the maps, the body that has the legal authority under state law to enforce the districts that should be used, that body should have the first opportunity to redraw the maps. It's not that the district court is ordering them to, it's that it's giving them an opportunity to. And in our reply brief, we give an example of how that process worked in another one-person, one-vote challenge to the Guilford County Board of County Commissioners, and how the legislative leaders were parties in that court, in that case, and they heard from the council about what the legislature's plans were, and that case ultimately was resolved after a preliminary injunction was issued. But the point is, it is the duty of the district court, once it finds a violation, to give the jurisdiction the first opportunity to remedy the violation. It's not that they're ordering the legislature to necessarily take action. And you maintain you could not get adequate relief against the Wake County Board of Elections? That's correct, Your Honor, because they don't have the power, under any interpretation of state law, to be able to redraw, to implement a new seven-member district plan that's never been used for the Wake County Board of Education. But if it's found unconstitutional, we could enjoin this plan, is what I'm saying. That is correct, Your Honor. Why is that not relief? Because it doesn't put in place any election system for the members of the, to be able to it doesn't put anything in place. That's the part I'm kind of not feeling. I'm trying to understand. If we enjoin, or keep this from going in, you have to let the process go back into play under the rules as articulated to then draw a plan. And that's the complication. And we don't do that. Right, but the complication in this case, Your Honor, is they changed more than just the districts. They went from nine single-member districts to seven districts and two super districts. They changed the elections to be from odd-numbered years to even-numbered years. They changed the terms of some members. They changed it from a, to a plurality system. So they made a number of changes. The only one that we are challenging is the failure to draw the district's equal population. But if that part is unconstitutional, they simply can't, under state law, go back to what have been doing. If they were keeping the system as it is before this law, if the whole law was unconstitutional, then they would need to have elections in 2015 instead of 2016, and they could use nine districts. But that's not the situation we have here. But even without, if we didn't have the state as the defendant or the plaintiff, we would still be able to go back to what we were doing in 2015. Yes, thank you, Your Honor. And let me just be clear about the facts that we allege in the complaint that establish a violation of one person, one vote. In 1976, this board was formed when the city and county school systems merged. In 2011, the board redistricted itself as proper and allowed under state law. The deviation in that nine-single-member district plan was 1.66%. That plan was used in 2011 and 2013 to elect the board. Is Louros your best case, the Louros case? Yes, Your Honor. Is that your best case? Yes. Louros v. Cox is the clearest Supreme Court pronouncement that even when the deviation is under 10%, if the reasons for that deviation are to favor urban residents over rural residents or vice versa, if it's a reason to favor one party over if you're treating incumbents differently. So the Supreme Court has said if your plan is designed to allow all incumbents to be reelected, that's a neutral principle. But if your plan is designed to favor the incumbents of one party over those of another, then that is an arbitrary discriminatory rationale that is not justified. I think the other side will say Louros is different. Isn't it a statewide type? This is local. This is different. Is it different? No, Your Honor. The fundamental principle that everyone's vote should count equally is just as important when you're voting for school board as when you're voting for members of Congress. The Supreme Court has said that in the Avery v. Midland County case out of Texas, where the question was, can we apply one person, one vote to a local body? Louros was the case from the district court? It's not a Supreme Court case? Well, the Supreme Court summarily affirmed, Your Honor, with an opinion. Well, there were two justices who wrote an opinion. Do you have any Supreme Court law that talks about the principles, that talks about principles in Louros and adopts them by a majority of the court? Well, Your Honor, summary affirmances are... I know what summary affirmances are. What the Supreme Court has said is you take it as an affirmance of the actual issue that was decided in that case, but you don't spread it any further than that. So I understand that they affirmed the reasoning for that case on those facts at that time. Right. And we... No, Your Honor, there is not another Supreme Court opinion. In other words, we clearly can say it moved to 10% level because, I mean, the result was that. What more can we glean from this summary affirmance of... There would be no justification for invalidating the legislative districts that were invalidated in Georgia unless you accept that partisan motivations, but also rural versus urban motivations, are not proper reasons to deviate from one person, one vote. And it makes sense. It's logical because the principle is... It may be logical. It's just not where the Supreme Court has gone. And I assume you followed the most recent argument before the court on the election laws. It's just the Supreme Court, I think, regrets the day that it ever got into the business of doing and determining that it wasn't a political question and they could get into managing districts. And they're not going to do anything, I don't think, unless there's a racial problem. So then there's a constitutional violation that way. Tenet versus Jefferson County is also a 2012 decision, 2013 decision of the US Supreme Court in which they reaffirmed the one person, one vote principle. Well, but I just said, if you have a racial problem or you have deviations beyond this 10%, they will do something. Your Honor, the court has been clear that votes should count equally. And if you're way... They never count equally. Don't you understand about legislative districts? They're always, they're not... The state doesn't... They don't lie the districts exactly even proportions. If they did, they'd have to redistrict every 10 minutes. Well, Your Honor, they use one set of population data, the 2010 census data. Right. And they don't make it even equal under that one set. Well, congressional districts are equal down to... Not equal, not precisely equal, not 30,001, 30,000, another 30,000. It just doesn't work that way. Well, it doesn't work that way if you talk about whether the census data is accurate at the time, but they do that based on the census data. I understand they do it, but there's always a deviation. And the deviation gets greater over the period of 10 years, which is why it's important to start from a principle of equality. But even in the very beginning, it's not precisely equal. There is a deviation, and it's a deviation that's permitted by the Supreme Court. Well, the Supreme Court has said that it's... Up and down 5%. Right? No, Your Honor. No. That's not the law. Okay. What case says that's not the law? Larios v. Cox and the summary informant... Okay. But that's your only authority, says that's not the law. That's the only Supreme Court case, Your Honor. But now, differentiate between simple partisan gerrymandering and one person, one vote principles. And I think the difference with this case, particularly with Larios, this is a 12 v. 6. That's correct, Your Honor. I mean, this is a totally different type of case when you consider that light. So, I mean, give us something there. I think Judge Motz, at least in terms of partisan gerrymandering, there seems to be a direction the Supreme Court has gone in that's pretty firm. That encompasses maybe the differentiation with racial gerrymandering and that sort of being treated differently. But the one person, one vote principle, I kind of view as a different... That is correct, Your Honor. And the Supreme Court has been clear that those are two different types of claims. Vietz did not say the partisan gerrymandering was non-justiciable. There were not five votes for that position. But beyond that, the court is clear that one person, one vote, using census data, recognizing it's not precisely accurate, but it's the best available data, that everyone's vote should count equally initially. So how do you calculate that? If the state has made up a plan that they say that does the best they can, and the deviation is 1% between each of the districts, that because my vote is counted 1% more heavily than yours, because we have that deviation, that's unconstitutional according to you? Depending on the reasons for that deviation. And there is another district court opinion that did apply, Larios, that's the Harris v. Arizona Independent Redistricting Commission. And in that case, they examined the reasons. The deviations were under 10%. They examined the reasons and ultimately found that the deviations were due to Voting Rights Act violations, not the partisan considerations alleged in that case. Thank you, Your Honor. May it please the court, I'm Alexander Peters of the North Carolina Attorney General's Office. On behalf of the state, with me at council table is Scott Warren, who is county attorney for Wake County Board of Elections. I intend to address the issues regarding the futility of the proposed amendment that the plaintiffs sought, as well as the de minimis rule itself. And Mr. Warren will address specific arguments regarding the non-justiciability of political gerrymandering claims, as well as issues specific to the county board of elections. Well, I'm not sure what category this question falls in. So if it falls in your colleague's category. I'll do the best I can. Sounds a lot different from what we've been talking about. Exactly. So if you could address yourself to the arguments that were made at the very end of the argument of your colleague on the other side, and particularly assume that the Larios case summary affirmance is now the law of the land, okay, that the Supreme Court held up. Does that control your case? And does that require a different result than the district court reached here? I don't believe it does, Your Honor. Why is that? I should back up, because I guess you asked two questions. Does it control or is it a different result? I do not believe it controls in this case. Because it's a summary affirmance. I asked you to assume it's Supreme Court law. Correct, correct. Leaving aside the summary affirmance and the issue there, I do not believe it applies here because of the difference in the cases. There is a difference, as Judge Boyle noted in his decision below, when you're talking about an entire state. It's the state versus local thing that you think is the difference. It's partially a state versus local thing. That you, I think Judge Boyle- One person versus one person, one vote is different on a statewide level as opposed to a local level. One person, one vote obviously applies across the board to all elections. Certainly North Carolina has held that. Yes, and we do not suggest otherwise. The question becomes, under the case law, unless there is a greater than 10% deviation, there is no prima facie case of violation of one person, one vote. That much might be challenging law. That's the one principle that seems like it might be pretty firm. The Supreme Court summarily affirmed, and you talk about what was 9.98% and this one is what, some odd percent? I'm not so sure that one is still there. As far as the Supreme Court case. Even with the summary affirmers, that is a result that's held that case. It wouldn't have summary affirmed it if that was different. With the de minimis rule, if it is within the 10%, then the question becomes, is it arbitrary or is it discriminatory? Which is the allegation the appellates have made here, and we view this in a 12B6 light here. Correct, but the allegation... We have to determine whether or not there's evidence that's sufficient, viewed in light that would allow this to go to the next stage. Not saying you're even going to win it next, but we're dealing with 12B6 here. So when we look at that, and then they make specific allegations that there's discrimination between urban and rural voters, and that you're pitting Democrats against Republicans in certain ways because of the leaning districts there. I mean, is that sufficient, if taken as true, to support the claim that this rendition was tainted by arbitrariness and discrimination? Well, I think I would challenge the premise there, Your Honor. What they make specific... The premise that we're in 12B6? No. The premise that we take it in a light most favorable to there? Of course not, Your Honor. The premise that they have made specific allegations, as you described. But the allegations say there's discrimination between urban and rural voters, and that's there, right? No, it is not. So that one you challenge, and they say that the districts are disproportionate in terms of putting candidates in certain districts where there's different political leanings? You challenge that? I do not challenge that they raise allegations that the reason the districts were drawn the way they were drawn is to favor what they describe as Republican or conservative voters or those who would favor conservative policies and agenda versus those who would favor progressive or Democratic agendas. That's what they have alleged. The words urban and rural appear one time in their complaint, and that is in paragraph one in the introduction, where it describes the creation of two super districts that divide the county, I'm quoting, divide the county like a donut with an inner urban super district and an outer rural super district to be implemented in 2016. They say nothing else in the complaint about rural versus urban. Everywhere else in the complaint, they talk about conservative versus progressive. Is it required to repeat yourself? No, Your Honor, I don't believe it's required to repeat yourself, but the claim they say they are making at this point is that the plan pits urban voters against rural voters, but they don't allege that in their complaint. They give a description of the two super districts that one is urban and one is primarily rural, which could just as easily give rise to the super districts is have one urban and one rural so that there's an equal voice for each of those groups. But the point is, nowhere in their complaint do they allege how rural voters are harmed by these, or excuse me, urban voters are harmed by being in an underpopulated district as urban voters. When taken in the light most favorable, which is, you know, of course, is always good argument, purpose argument, is you bring out some good points. So what that means, we go back now and we're going to listen and look at what you're saying to see if it's really there. But I'm just trying to get a fair reading of this, and it seems to me that the threshold is whether there's sufficient evidence to meet this allegation of pain in terms of how it's done. And they point to this evidence from the General Assembly in terms of racialized and polarized political-type voting and what's going on there, that there's this taint there. Why is that not sufficient for 12b-6? Again, Your Honor, the allegations they make are political taint. There are not allegations of a racial motivation here. And political gerrymandering alone is not going to be enough. Political gerrymandering alone is not enough. That gets it into the political question. And we certainly agree that when you're talking 12b-6. I say it's not enough, but I mean, that's kind of the indication we have. I'm not sure there's a case on point that says it yet, but it's pretty strong there. And we agree that when you're talking 12b-6, the complaint has to be looked at at the light most favorable to the non-moving party with the reasonable inferences drawn therefrom. But the complaint as drafted and even the amended complaint, which was attached to the motion after the defendants had filed their motion to dismiss and laid out what they thought the problems with the complaint were in terms of 12b-6, even then the only reasonable inferences that arise from the complaint are a political dispute. Paragraph number 66 of the complaint summarizes the complaint by saying the only goal that the new plan accomplishes is to further Republican interests and advance conservative agenda policies. Well, you created two super districts. Interesting creation, I must say. I happen to live in Wake County, but it's just interesting. But I mean, they refer to these districts as being urban and rural. Clearly they are. Couldn't we tie every reference then in to say this is urban and you're talking rural? Your Honor, I don't think that's giving rise to reasonable inferences from the complaint. If you go to Wake County, you know that donut is not urban. I mean, that's clear. We know that, and they call it specifically what it is. It's rural, Wake County. And then you got the donut hole, which is right there. That's, isn't that? I'm not challenging the urban-rural descriptor that they give to those districts. I'm saying they make no allegations of how that matters in terms of the way the districts are drawn or in terms of the way their plaintiffs are harmed. The harm they allege is political harm. Nowhere do they say how the interests of rural voters, regardless of politics. Isn't there a race component there though? That donut hole there. I mean, given the evidence for the legislature, I mean, it's pretty clear what that hole is. Right in smack in the middle of an urban area there. Well, it includes a good chunk of carry too. Sir, is there a racial allegation in the complaint? I'm sorry, Your Honor? Is there a racial allegation in the complaint? No, Your Honor. There is no racial allegation in the complaint. I do want to mention very briefly the question of amendment of the complaint in futility. The problem that the plaintiffs are pursuing with their proposed amended complaint, I think at root, is they are conflating two members of the General Assembly. This goes in the whole business of having these, having Senator Tillis and the others as defendants here. Correct. And we went back and forth on that in the amendment. And I think it was pretty clear that the state of North Carolina is not a problem. Correct. And so this goes to the question of the enforcement authority. Right. And clearly, there is no enforcement authority by the Speaker of the House or the President Pro Tem. They are not the General Assembly. They do not have the ability to enact laws. They do not have the ability to make the General Assembly do anything. In some senses, this is very... So, if you explain what was said, because I know it's happening that way, typically the court will give the legislature an opportunity to go back and fix it and do it differently. And if you don't, then they step in. How does that come into play? I don't think that's a problem at all here, Your Honor. The way it appears to me this works, it's quite normal in redistricting cases of whatever variety that there may be an opportunity for a new plan to be enacted. Here, as I understand it, what the plaintiffs have asked for is that the mechanism regarding elections in Wake County Board of Elections be struck down. That, as I understand it, includes the districts. It includes the 7-2 district makeup. And it includes the timing of the elections because all of those are part of the mechanism. I think for the court to do that, the court must find that the statute is unconstitutional, which I think arguably means that the plan enacted by the school board in 2011 comes back into place unless and until the General Assembly acts again to do a new plan consistent with whatever rulings the court may issue. This is unlike the typical districting case in that there was a plan enacted after 2010 census. Normally, the reason you can't go back is because you'd be going back to a plan that everybody knows is way out of whack in terms of one person, one vote. That's not the case here. Unless the court has other questions, I'll yield to Mr. Warren. Well, just with respect to that last point, I thought it was pretty established that if the court would enjoin a plan, it could direct the government agency to come up with a new plan so that you just aren't waiting for whether they're going to act or necessarily go back to the old plan. In my experience and my memory, the way that is typically worded is the government entity, excuse me, must be given the opportunity to draw the new plan or the court will impose one for it. All right. But in any event, you're not waiting for the, you don't, the court isn't just held hostage to whatever the legislature is going to do. Correct. But again, in the usual redistricting case, we're talking about redistricting that has happened right after the census where there is not another plan that could legally be gone back to. Here, there is a plan that complies, that's valid under the 2010 census that could come back into place were the court to strike down this plan. Thank you. Good morning. I see I'm out of time already before I start. How much time may I have? You have about 10 minutes.  Thank you very much. May it please the court. Good morning. My name is Scott Warren and I'm appearing on behalf of the Wake County Board of Elections. The Wake County Board of Elections is a three-member board appointed by the North Carolina State Board of Elections. And North Carolina County Boards of Elections are distinct legal entities from counties in which boards are located. What issue are you addressing? I'm actually here to follow the law, whatever that will be. We, I'm going to get right to it. That's what we all do. I'd like, I would like to get to it because my client needs to know as soon as possible what action this court will take so that may begin the process of redistricting the voters. Your client is? The Wake County Board of Elections. Elections. And it's a vital and time-consuming task. Under the 2013 law, the geocode work would need to be completed. When I say 2013 law, the new law, the geocoding work would need to be completed prior to the presidential preference primary to be conducted in March of 2016. What would need to be completed geocoding? The precedent geocoding would, syncing up where voters live with what precincts they go to, the demographic, the how you run the election part of it. And it's a very complicated place because now the Wake County is one million residents, not one million voters. I'm sorry, I can't, I can't quite hear you as one, Jake. Geocoding. Yeah, I understand. I've now got the geocoding, but the county is? One is now one million residents. One million. I'm sorry to rush with my time. But since the complaint was filed, I mean, there's an allegation of 900 and some thousand. And recently the county has now surpassed, according to the Census Bureau, a million. So that's how quickly the county is urbanizing, how quickly it's growing, how quickly it is shifting. So while there is a great amount of rural area in Wake County, there's also a lot of very quickly urbanizing areas in the county. The county is composed of 12 municipalities in the county proper, with two or three more growing into it from other counties. So it is probably the most rapidly urbanizing county in the state. But under the new law, we've got to get the, my board has got to get it so that they know who's going to file when. So what issue you are addressing that we are dealing with today? I mean, this is really nice stuff. I'm enjoying it. But I like hearing about what's going on in Wake County. But what are you speaking to that we are dealing with today? I am speaking that the complaint is deficient. And it all goes back to the complaint in the trial court was correct because the complaint did not allege immutable characteristics that cannot be changed. My co-counsel was quite correct that it talks about groups with different political philosophies. And I think that assumes that groups are all going to vote alike and think alike. But that is not necessarily the case. And our strongest case is the Byth case. And that's the case that we have mentioned in our brief, which basically goes to the point that to claim an impermissible political bias is to claim political gerrymandering. And to claim political gerrymandering is to raise a claim that's non-justiciable. The failed complaint acknowledges, and we all must assume here, that the end result is of the new legislation is political gerrymandering. What if it's putting rural voting against urban voting? Again, it goes back to the complaint. There was only a passing reference to rural and urban in paragraph one of the complaint. And that was purely for descriptive purposes. Do we accept that the donut itself is rural and that the donut hole is urban? I think you can accept that. I think you have to accept that under these circumstances. Do you accept that anything said about them would also be talking about rural and urban? I think that's true, Your Honor. But again, it goes back to, it's not saying that a certain group who can't change their characteristics, that this group, because they're white or disenfranchised, it's not in there. The racial component is not in there. The ethnicity components, none of that is in there. It is, we don't like this because people that we support may not do as well as we think another group will do. And that also presupposes that an elected body, that's an independent body like the school board, is going to do certain things all the time, whereas they always have pressures, financial pressures, overcrowding pressures, high poverty pressures. So there's no way, I think reasonably, that you can say that. Do you know what the purpose of the super district was? Well, I think it is adding additional representation because under the old law, you get one vote. You vote for one representative. Under the new law, you get to vote for two. You get to vote for your number district. There's seven number districts under the new law. And you get to vote for either A or B, depending on where you live. So it gives you more of a sense. Why was that important? You had single member districts, and I think it's going out to single member districts sort of just seismic in terms of leveling the playing field and diversity in terms of elected accountants. Why does North Carolina want to go backwards in that sense and going to super districts and creating this donut that is clearly identifiable as urban and rural? Why? What was the purpose of that? I don't represent the legislature. Don't represent the state. But the argument would be made that it was. Matter of law, you win then. Increasing your ability to participate in the process. And I think it's really, is one, is either process, all things considered, legal. And I think it is not a one person, as Judge Mott said early on, there is always a dilution even when you start from ground zero. I agree, but when you add 1.6 to 6, why do you want to go up to 9.18? It's one thing you can't reach it, but it's another thing, since we can't reach it, let's get as far as we can from it. I would say that that percentage is more on the two large districts, but the number districts are nowhere near that much of a variance. That's the more reason why you should stay with the single member districts. Seemed like you were doing better in terms of reaching the goals of Baker v. Todd than you were. Why would you go to a system that's worse? And raises some question about the efficacy of bringing about the kind of diverse and better nation, I believe, I think many would say, in terms of being more representative in elected politics. Why do you want to, that's what I meant by backwards. I didn't mean it had to be completely pejorative. I meant it to be in a sense of something that's proven to be very inefficient and ineffective for the diversity of this nation. I understand your point. Why would we want to go backwards? Why would North Carolina want to do that? Again, we carry out, we administer the election, but I. You just have to eat the sausage. You don't make it. That's a good way to put it, Your Honor. Right. But again, since we are in 12 v. 6 posture, I think it's incumbent upon all of us to go back and look at what was alleged, what the proposed minute complaint alleged, and does it give you a reason to go in under a one-person, one-vote theory? And we would say that it does not. We have to agree to some extent. What does a one-person, one-vote proposition mean under Reynolds v. Sims? I mean, if the allegation is that there are folks who will not have the same level of plan, is that sufficient under one-person versus one-vote? I mean, we're not talking about politics. We're not talking about even race. We're just talking about with this deviation that exists here, and the Supreme Court on Lawrence has said it doesn't have to be 10 percent anymore. Is that sufficient, at least at 12 v. 6, to make the allegation to take it as true? And if I may respond, then my answer to that would be that it is not alleged that it is creating that effect. It just basically says there's more, there'll be more voters in a district who may think a certain way versus another district. It doesn't say that as a pattern of disenfranchisement, of being shut out of the political process. That's a very large inference and a large leap. I would say to the court. But to summarize, my client needs to know as quickly as possible what to do because it is a big concern to put on any election in Wake County. Thank you very much. Your Honor, they say you don't allege in your complaint allegations sufficient to overcome this dismissal on the 12 v. 6. Would you point, if you will, to where it is? I understand rural and urban is only in one place, and it's kind of very generally stated. It doesn't state sufficient. This is why we say the complaint alleges a rural versus urban bias. It is correct that those words, rural and urban, are used in the first paragraph. We then go on to allege. So that's the first of the logical progression. Rural versus urban is how those districts are configured. We then have the map. We show the data. We then say that the people who live, the third stage of that is that the people who in the rural district. That is our claim. The fourth part of that under Daley v. Hunt is that the justification for that difference is not a legitimate, neutral governmental justification. And that is sufficient to allege a one-person, one-vote claim. We explain the difference. We show that the votes are weighted differently. And we say that it's for a reason that's not legitimate. The Supreme Court has been clear for a long time that deviations under 10% can still be held unconstitutional. In Conner v. Finch in 1977, the court says, even a legislatively crafted apportionment plan with deviations of less than 10% could be justified only if it were based on legitimate considerations incident to the effectuation of a rational state policy. If you look at every case where a court has thrown out districts or upheld districts on one-person, one-vote grounds, the legitimate policies that justify the deviation are neutral. Geographic compactness, respecting subdivision boundaries, preserving the core of previous districts. Giving voters stronger voice in the process because of where they live is not a neutral justification. It can't justify deviations from one-person, one-vote. And that is what other lower courts have found in ruling that political considerations don't justify the deviation. The fact that we point to political considerations does not turn this into a partisan gerrymandering case. These does not apply here. We are not alleging that Republicans or Democrats are being disadvantaged. We're saying that... It's the meaningful distinction between one-person, one-vote claim that you bring and partisan gerrymandering. Well, to begin with the nature of the harm, we're saying that the harm is every single person who lives in that urban district has the same harm. And the harm is not a political harm. The harm is just that their vote is devalued. It doesn't carry the same weight. And that it becomes exacerbated. We're talking about 44,000 people difference between those two districts at the time the districts were drawn, which we know will only get greater given the quick population growth in Wake County. That's a substantial difference. It's similar to the prison gerrymandering cases where a prison population makes districts different in size. That doesn't convert it into some other type of case. So the essential distinction between a one-person, one-vote claim and a partisan gerrymandering claim is that in one-person, one-vote, you're comparing the size of the districts and whether the weight of the vote of voters in each of those districts at least starts out as equal and fair. In a partisan gerrymandering case, you're looking at voters as how they vote, whether they're Republican or Democrat. That's not what we're looking at here. We're looking at where they live and whether or not they live in an underpopulated or an overpopulated district. So when the state says elections have consequences and there's winners, the important thing to know is that in a democracy, the winners do not get to rig the system so that their votes count more in the next election. So I should have asked this on the side. I'm trying to figure out this donut thing is really intriguing, that you would run a donut all the way around the county and then put a part in the middle. Is it your intention, the intent is to try to get people that you would figure the folks in this outside would, their influence would be different than the ones on the inside? That's correct. And it has important implications for school board issues. The siting of schools, bus transportation, student assignment policies, all of those things may have, voters may have different views on those issues depending on whether they live in the inner city or this outer suburban ring. That's why it's just as important to apply equal weight to everyone's vote in a county as it would be statewide. As you know, in Wake County, you can go from people who have horses and chickens in their backyard to inner city loft residents in high rise apartments. Exactly, your honor. So my point is people have very different experiences and interests, even within the county and very different policy preferences for the school board. And what we're saying here is that it's arbitrary and discriminatory to weigh their votes differently based on where they live. And that what the school board did, what the General Assembly did here by allowing those partisan considerations, whether they were right or wrong, they may have gotten it wrong about what people's partisan affiliations are or how they might vote next time. What matters is that their intent and their motivation in deviating from one person, one vote was to have a particular partisan outcome. And that's not permissible under the Supreme Court's jurisprudence. Thank you very much. We will come down and greet the lawyers and then take a brief recess.
judges: Diana Gribbon Motz, Roger L. Gregory, James A. Wynn, Jr.